197 So.2d 784 (1967)
KNOX GLASS, INC. and Travelers Insurance Company
v.
William Scott EVANS.
No. 44348.
Supreme Court of Mississippi.
April 10, 1967.
*785 John M. Roach, Daniel, Coker & Horton, James L. Garner, Jr., Jackson, for appellants.
T. Eugene Caldwell, James A. Phyfer, Jackson, for appellee.
BRADY, Justice:
This workmen's compensation case is appealed from the Circuit Court of Rankin County. The attorney referee and the full Mississippi Workmen's Compensation Commission denied benefits to appellee. The circuit court, however, reversed and awarded disability benefits, and from this award the present appeal is prosecuted.
The sole issue for our determination is whether appellee's employment aggravated, precipitated or accelerated a pre-existing heart condition so as to produce appellee's present disability. The relevant facts upon which the determination of this question must rest are as follows:
In the summer of 1949 appellee went to work for appellant, Knox Glass, Inc., as a truck driver and worked in that capacity until discharged in September 1964. The record discloses that in February 1961, while on a trip for appellant to Perry, Florida, appellee became ill, experiencing chest pains and difficulty in breathing, all of which he attributed to indigestion. This is the only episode in the record which could indicate that appellee sustained a work-connected injury. Upon returning to Jackson on February 21, 1961, appellee was admitted to the Baptist Hospital for examination by his physician, Dr. William Suttle. Dr. Rosenblatt, a cardiologist, was called in as a consulting physician. Dr. Rosenblatt examined appellee on March 1, 1961, and found that he was suffering from arteriosclerotic heart disease with left ventricular enlargement and mild congestive heart failure. He also found evidence of a myocardial infarction, the age of which he could not determine.
Appellee was discharged from the hospital on March 8, 1961, and was thereafter given a six months sick leave by appellant. He returned to work on September 1, 1961, and after making three or four trips for appellant, was again hospitalized for what was diagnosed as an ulcer and congestive heart failure. At this time Dr. Rosenblatt interrogated appellee with reference to the nature of his employment and found that appellee was only required to drive appellant's truck to its destination and then return to appellant's depot. He was not required to load or unload the truck, nor was it necessary for him to open the doors of the truck for unloading upon reaching his destination.
Appellee was again hospitalized in 1963 under the direction of Dr. Suttle and Dr. Rosenblatt. At that time he was complaining of chest pains and shortness of breath, and it was ascertained that his electro-cardiogram had changed from previous tracings in that there was now evidence of prolonged intraventricular conduction.
In March 1964 appellee was given a routine x-ray by a tuberculosis unit of the State Board of Health. This examination revealed that he was suffering from an enlargement of the heart. Upon further consultation with Dr. Rosenblatt it was recommended that appellee retire from work.
Dr. Rosenblatt last examined appellee in September 1964, at which time his diagnosis continued to be the same as it was initially, namely, "arteriosclerotic heart disease with marked heart enlargement and an old miocardial infarction." There was no change in his diagnosis from March 1961 until September 1964. Dr. Rosenblatt testified that he had never received any history of a sudden or acute onset of pain in appellee which appeared to be precipitated by exertion of any type. The record reveals that appellee worked regularly at all times during this period except for the time he was hospitalized.
Appellee offered Dr. A.W. St. Clair, a specialist in internal medicine, who testified on direct examination that he examined appellee *786 on August 23, 1965, and from the history given him at that time, he concluded that appellee had probably suffered a mild myocardial infarction in February 1961. This doctor further testified that appellee's work activities had probably contributed to his episode in 1961. On cross-examination, Dr. St. Clair admitted that based upon appellee's medical history, he would have expected some changes in his heart condition between 1961 and 1965, regardless of what his activities had been, since arteriosclerosis is a serious cardiovascular disease, usually progressive in nature. He conceded that in light of appellee's medical history it would be virtually impossible to specify exactly when the miocardial infarction, discovered in 1961, had actually taken place. Dr. St. Clair admitted that if a person had nocturnal dyspnea, such as appellee showed in his history, it would probably be a warning that more congestive failure was occurring. He freely testified that the percentages of myocardial infarctions occurring during rest and at work are about the same. In conclusion Dr. St. Clair stated that he had also made a second diagnosis of bronchial asthma in appellee and that such condition could also be a cause of heart failure.
On examination by the attorney referee, Dr. St. Clair admitted that he could only say that the work activities probably contributed to the progress of appellee's heart condition, but he was unable to give any percentages as to the degree of contribution.
Dr. Norman Burnstein, also a specialist in internal medicine, examined appellee on only one occasion, March 31, 1965. He testified that any emotional or physical fatigue in an individual who has suffered a myocardial infarction will aggravate that condition. A reasonable interpretation of Dr. Burnstein's testimony is that it was within the realm of probability that appellee's continued work, long hours, physical exertion in climbing into a truck cab, as well as in driving the truck, all based upon the history given by appellee, contributed in part to his disability.
On cross-examination, Dr. Burnstein admitted that appellee's medical history from 1961 until his examination in 1965 was a continuation of one disease process, and that his evaluation as to the degree of contribution by appellee's employment was based entirely upon the history of work activity given him by appellee. He conceded that there was no sudden episode or incident which aggravated the condition and that according to the patient's history, appellee apparently experienced no greater difficulty in March 1964 than he had experienced in the prior years 1961, 1962 and 1963.
After having heard the testimony the attorney referee denied appellee's claim, holding that there was no causal relationship between the employment and the disability. The attorney referee's order was affirmed by the full Commission. Upon appeal, however, the circuit court reversed, holding that there was substantial lay and medical testimony to support the claim of causal connection.
Appellants assign only one error, namely, that the lower court erred in reversing the order of the Commission since the findings of the Commission were supported by substantial evidence. We have read carefully the record and reviewed the briefs of counsel, and it is our conclusion that the trial court did err in reversing the order of the Commission. The record reveals that Dr. Rosenblatt repeatedly examined and treated appellee between 1961 and 1964. At the hearing before the attorney referee, Dr. Rosenblatt was asked:
Q. Doctor, I'll ask you to state in your opinion whether or not with the disease that you have diagnosed and which has been established, that in all probability Mr. Evans would have been disabled, as he is, regardless of what he had been doing, if anything.
A. That is correct.

*787 Q. Doctor, I'll ask you to assume a prior existing disease and ask you, please, sir, to tell us what percent that disease contributed to his present disability.
A. In my opinion there is just no doubt that 100% of his present disability is due to his pre-existing heart disease.
While it is true that Dr. St. Clair and Dr. Burnstein testified that it was within the realm of probability or possibility that appellee's work contributed in part to his disability, their testimony is in sharp conflict with the testimony of Dr. Rosenblatt.
Mississippi Code Annotated section 6998-18 (1952) required appellee to file his claim within two years of the date of the injury. It is unnecessary for us to consider this legal requirement, however, since the proof is insufficient to show that appellee actually sustained a work-connected injury within the meaning of the workmen's compensation act. While we are sympathetic to appellee's plight, we cannot, because of this feeling, deviate from the well established rule that where the order of the Commission, as fact finding agency, is supported by substantial evidence, such order should be affirmed by this Court on appeal. Dunn, Mississippi Workmen's Compensation § 179 (1957). We have heretofore pointed out that the basic test is not whether the claim is supported by substantial evidence but whether the findings of the Commission, either in allowing or denying the claim, is supported by substantial evidence. Freeman v. Miss. Power & Light Co., 230 Miss. 396, 92 So.2d 658 (1957).
In numerous cases this Court has held that where the finding of the Commission is supported by substantial evidence, we are not authorized to reverse its judgment. E.g., United Funeral Homes, Inc. v. Culliver, 240 Miss. 878, 128 So.2d 579 (1961); Cowart v. Pearl River Tung Co., 218 Miss. 472, 67 So.2d 356 (1953); Sones v. Southern Lbr. Co., 215 Miss. 148, 60 So.2d 582 (1952).
In Futorian Stratford Furniture Company v. Davis, 185 So.2d 665 (Miss. 1966), we stated that the circuit court must review the findings of the Workmen's Compensation Commission only as an appellate court and that the circuit court should not reverse a judgment of the Commission unless the Commission was manifestly wrong and its order was not supported by substantial evidence. In the case at bar there was substantial evidence to support the finding of the Commission that appellee had not sustained an accidental injury, and that there was no causal connection between the employment and his disability. There was positive evidence from the only heart specialist who had treated appellee over a four-year period that appellee might have been disabled without any work activity at all. The only episode in the record which could indicate that appellee sustained a work-connected injury occurred in 1961, and a claim based upon this incident was limited to a two-year period under section 6998-18, supra.
We conclude, therefore, that there was substantial evidence to support the denial of benefits by the full Commission, and that the evidence was lacking upon which the circuit court could have predicated its reversal of the Commission's order.
For these reasons, the judgment of the circuit court is reversed and judgment is entered here for appellants.
Reversed and judgment here for appellants.
RODGERS, JONES, INZER and ROBERTSON, JJ., concur.